UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:11-CR-84 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| GRADY TALLENT | ) | |

## SENTENCING MEMORANDUM

Unable to reconcile the clear Congressional intent in 18 U.S.C. § 2259 to compensate victims of child pornography and the proximate cause requirement embedded in that restitution statute's language, the Court reluctantly denied restitution to "Vicky," the child pornography victim whose images appeared in those unlawfully possessed by Defendant Grady Tallent ("Defendant" or "Tallent"). Section 2259 makes restitution mandatory in child pornography cases. Before restitution can be awarded, however, the government must prove that portion of a victim's losses a particular defendant proximately caused. Finding Congressional intent and the statutory language irreconcilable, the Court, following the latter, **DENIED** restitution.

## I.    BACKGROUND

In January 2009, an undercover online task force identified child pornography on a computer traced to Defendant Tallent. On June 7, 2009, authorities conducted a search (pursuant to a warrant) and found numerous videos and some pictures on Tallent's computers. Some of these videos contained children under the age of 12, and a number involved sadomaschochistic or other violent conduct.

Tallent was charged in September 2011 with one count of receipt of child pornography

(Court File No. 1). He pleaded guilty before the Magistrate Judge in December 2011 (Court File No. 9). Although the Presentence Investigation Report ("PSR"), revised as of March 13, 2012, indicated no victim had come forward, the government received an email from Vicky's attorney on March 14, 2012. The Court continued the sentencing hearing, which had been set for March 22, 2012, in order to discuss issues related to restitution in child pornography with the parties. The Court met with counsel from both the government and Tallent in chambers to discuss some of the issues which arise in restitution claims under § 2259, and requested both sides to submit briefs addressing the most pressing questions. The government filed its brief on April 13, 2012 (Court File No. 15), and Tallent filed a brief three days later (Court File No. 16).

According to the documents submitted by the government on behalf of Vicky, the full amount of her economic losses is now $1,321,226.52. This amount consists of $106,900.00 of future counseling costs, $147,830.00 in educational and vocational counseling needs, $722,511.00 in lost earnings, $46,170.52 in expenses paid in out of pocket costs for forensic evaluations, and $297,815.00 in attorney's fees. Vicky's attorney notes Vicky has received $512,272.04 in restitution payments, which leaves a net amount of economic losses of $808,954.48.[1] In a victim impact statement signed on March 5, 2012, Vicky explains ""[e]veryday, people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain." The government and Tallent agreed an appropriate amount of restitution Tallent should pay is $3,972.86. This amount represents Vicky's net outstanding economic losses ($ 794,572.19) divided by the number

_____

[1] According to information collected by the probation office, Vicky's attorney identified $14,382.29 in attorney's fees as having accrued before the date of Tallent's conviction. Subtracting this amount from $808,954.48 leaves $ 794,572.19.

2

of defendants convicted of possessing Vicky's image, which the government contends (without citation) is at present approximately 200 (*see* Court File No. 15, p. 5).

## II.    DISCUSSION

Federal courts throughout the country have struggled considerably with interpreting the restitution provision in 18 U.S.C. § 2259, largely without having reached a satisfactory resolution. *See United States v. Kennedy*, 643 F.3d 1251, 1265 (9th Cir. 2011) ("Although our sister circuits have also struggled with this issue, no court has yet developed a method for calculating a restitutionary award under § 2259 that comports with the statutory language."). As the Court explained to the parties in chambers, significant questions include the application of a proximate cause requirement to a defendant's actions, how a proximate cause analysis should be performed, and how a court should determine the amount of restitution, if any, it ought to award under the statute. At the heart of much of the ongoing confusion regarding the proper interpretation of § 2259 is the tension, on the one hand, between a clear Congressional intent to compensate victims of child pornography and, on the other, the statutory requirement, as interpreted by the courts, for the government to prove a given defendant's action is the proximate cause of a child pornography victim's losses, calculable with some reasonable certainty. Finding that considerable tension irreconcilable, the Court concluded the government did not present evidence sufficient to demonstrate Tallent proximately caused Vicky's losses with any degree of certainty. Thus, fully cognizant its ultimate decision is at odds with Congressional intent as expressed in § 2259, the Court reluctantly concluded it must deny the government's motion for restitution on behalf of Vicky.

### A.    The Statutory Provision

3

The relevant statute under which restitution claims are made is 18 U.S.C. § 2259. Importantly, this provision is entitled "Mandatory Restitution," and provides "[n]otwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, *the court shall order* restitution for any offense under this chapter." §2259(a) (emphasis added); *see also* § 2259(b)(4)(A) ("The issuance of a restitution order under this section is mandatory.").[2] Accordingly, the statutory language in this provision appears to afford a court no discretion regarding whether or not restitution is appropriate. Moreover, a court "shall order restitution for any offense under this chapter," § 2259(a), which includes transportation, shipping, receiving, and distribution of child pornography, *see* §§ 2252 & 2252A. Thus, Congress made no distinction between the various actors involved in the production, distribution, receipt and possession of child pornography, notwithstanding the strong possibility the culpability of these actors varies.[3]

The statutory language also appears to require the court to pay the "full amount of the victim's losses." §2259(b)(1) ("The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court pursuant to paragraph (2)"). This language notwithstanding, very few courts have ordered restitution for the full amount sought by a victim.

---

[2] As some courts and scholars have noted, the mandatory nature of restitution under the statute distinguishes it from the restitution provisions under the Victim and Witness Protection Act of 1982 ("VWPA"), but makes it similar to the Mandatory Victims Restitution Act of 1996 ("MVRA").

[3] Subjecting any child pornography defendant, regardless of the specific offense for which he was convicted and his relative degree of culpability, to the restitution provision is consistent with the Congressional purpose of providing for the full restitution of victims, given the likelihood possessors and receivers would constitute the overwhelming majority of offenders. By not making a distinction between producers, distributors, receivers and possessors, Congress considerably broadened the pool of restitution payors.

4

The statute provides a list of costs for which restitution to a victim must be made:

(A) medical services relating to physical, psychiatric, or psychological care;
(B) physical and occupational therapy or rehabilitation;
(C) necessary transportation, temporary housing, and child care expenses;
(D) lost income;
(E) attorneys' fees, as well as other costs incurred; and
(F) any other losses suffered by the victim as a proximate result of the offense.

§2259(b)(3)(A)-(F).  As discussed below, courts have particularly struggled with two questions related to this provision: 1) does the "proximate result of the offense" language in §2259(b)(3)(F) require a showing of proximate cause for the entire list of costs or only "any other losses"; and 2) assuming the statute imposes a proximate cause requirement (either only on "any other losses" or on all six of the items), how should a court undertake the proximate cause analysis?

The statute proscribes a court from considering two facts when considering whether to issue a restitution order: 1) the economic circumstances of the defendant; or 2) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source.  § 2259(b)(4)(B).  Notwithstanding this statutory language, courts have crafted restitutionary amounts with reference to other possible sources of restitution for a victim.

Finally, the statute defines what counts as a victim: "For purposes of this section, the term 'victim' means the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian."  § 2259(c).  Although the question of who is a victim has arisen in child pornography cases, courts have been uniform in finding those who have come

5

Case 1:11-cr-00084-CLC-WBC   Document 21   Filed 06/22/12   Page 5 of 26   PageID #: 117

forward as victims to meet the statutory definition,[4] and the Court concludes Vicky is a victim in this case.[5]

## B.    Purposes of Criminal Restitution

Before considering how to resolve some of the thorny questions at issue in this statute, the Court pauses briefly to consider its purpose.  Informing the Court's analysis of the restitution provision in 18 U.S.C. § 2259 is an understanding of the purposes of criminal restitution generally. Most importantly, as distinct from damages sought in a civil action, a court considering a criminal restitution award must never lose sight of the fact "[t]he criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole."  *Kelly v. Robinson*, 479 U.S. 36, 52 (1986).  In *Kelly*, the Supreme Court, considering whether a debtor could discharge her state restitution obligations in bankruptcy, concluded "[b]ecause criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, . . . restitution orders imposed in such proceedings operate 'for the benefit of' the

---

[4] The courts have been uniform in concluding that the children depicted in the child pornography are victims with the definition of § 2259.  But there has been no discussion that this also creates tension with the proximate cause analysis.  To be a victim means the individual must be harmed "as a result of a commission of a crime under this chapter."  This could mean the child was harmed as a result of some act other than the particular defendant's offense of conviction. For example, the child could be the victim of some sex crime under the chapter in general but not the victim of the defendant's crime.  This is a plausible reading but it then would mean the term "victim" is defined so narrowly that the child pornography victims would never recover.  The courts that have interpreted this language read it to mean the child is the victim of the particular offense of conviction of the defendant before the court.  But with this reading it is difficult then to conclude that the child has not been harmed as a result of the commission of the crime "under this chapter" committed by Defendant.  A further discussion of the evidentiary problems inherent in determining whether a receiver or possessor of child pornography proximately caused a victim's losses follows below.

[5] Tallent does not challenge Vicky's status as a victim here.

State. Similarly, they are not assessed 'for . . . compensation' of the victim."[6] *Id.* at 53 (citation omitted). Four years later, considering an order of restitution under the 1982 VWPA, the Supreme Court observed "Congress intended restitution to be tied to the loss caused by the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 418 (1990).[7]

Neither § 2259, which was enacted in 1994 as part of the Violence Against Women Act, Pub.L. No. 103-222, 108 Stat. 1796, nor the relevant provisions in the VWPA or the MVRA explain the purposes underlying these criminal restitution statutes. For § 2259, the statute at issue in this case, the legislative history provides some help: " Congress, in the legislative history of § 2259, cited the Supreme Court's landmark decision in *New York v. Ferber*, 458 U.S. 747 (1982), in which the Court discussed in depth the devastating repercussions of sexual exploitation not only upon the victimized child, but greater society as well." *United States v. Evers*, 669 F.3d 645, 656 (6th Cir. 2012). The focus on the greater society, consistent with the Supreme Court's discussion in *Kelly*, *see* 479 U.S. at 52, suggests to some extent the purposes of criminal restitution accord with purposes district courts regularly consider under 18 U.S.C. § 3553(a)(2) when imposing sentence on a criminal defendant. *Compare United States v. Hardy*, 707 F.Supp.2d 597, 604 ("In sum, courts agree that restitution is a criminal penalty that should not be confused with civil damages. And, its

---

[6] The criminal restitution provision at issue in *Kelly* required a defendant to "make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner of performance." *Kelly*, 479 U.S. at 52.

[7] In reference to the statutory command in 18 U.S.C. § 3663(a)(B)(i)(I) (then codified at § 3579) for a court to consider "the amount of the loss sustained by each victim as a result of the offense," the Supreme Court noted "had Congress intended to permit a victim to recover for losses stemming from all conduct attributable to the defendant, including conduct unrelated to the offense of conviction, Congress would likely have chosen language other than 'the offense,' which refers without question to the offense of conviction." *Hughey*, 495 U.S. at 418.

purposes are not only punitive but also retributive, and perhaps even rehabilitative."), *with* § 3553(a)(2)(A) (sentences should reflect seriousness of offense, promote respect for the law, and provide just punishment) and § 3553(a)(2)(D) (sentence should provide defendant with, *inter alia*, needed educational and vocational training). At the same time, however, there can be no doubt § 2259 also strongly evinces Congress's intent to compensate the victims of child pornography offenses. *Evers*, 669 F.3d at 656 ("Section 2259 is phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse.") (quoting *United States v. Laney*, 189 F.3d 954, 966 (9th Cir.1999)) (internal alterations removed); *see also United States v. Aguirre-Gonzalez*, 597 F.3d 46, 52 (1st Cir. 2010) (noting a "general shift in the restitution statutes towards a more compensatory regime," but concluding restitution ordered as part of a sentence remains a criminal, not a civil, penalty).

These sometimes competing purposes in § 2259–the need to ensure the criminal justice systems continues to operate to the benefit of the larger society and the need to ensure compensation for a child pornography victim–likely accounts in part for the diversity of approaches courts have taken when considering restitution requests under the statute. Nor can the Court resolve this tension; that is a job for Congress. Instead, the Court observes that in crafting its restitution analysis in this case, it must make sure the approach it takes accords with both the general purposes of criminal restitution to uphold society's interest in the fair and just punishment of convicted defendants and the specific purpose–and clear statutory command–in § 2259 to compensate victims for the full amount of their losses. In fact, as explained below, the Court concludes the statutory language precludes fulfilling Congress's intent to provide compensation in this restitution statute.

C.      **Analysis of Restitution Claim under § 2259**

8

Although the Court will set out in considerable detail below how it conducted its analysis, it begins here by identifying the three-step process it follows. This process is concisely articulated in *Kennedy*, which is cited with approval by the United States Court of Appeals for the Sixth Circuit. *See United States v. Evers*, 669 F.3d 645, 659 (6th Cir. 2012) (citing *Kennedy*, 643 F.3d at 1262-63). In order to award restitution under § 2259, the Court must make the following three determinations: "(1) that the individual seeking restitution is a "victim" of the defendant's offense . . . ; (2) that the defendant's offense was a proximate cause of the victim's losses . . .; and (3) that the losses so caused can be calculated with "some reasonable certainty." *Kennedy*, 643 F.3d at 1263 (citations omitted). As already noted, the Court concluded Vicky is a victim within the meaning of § 2259–a conclusion neither party disputes. Second, the Court concluded Tallent's offense was a proximate cause of Vicky's losses. Restitution is not proper, however, because the government has not shown the losses proximately caused by Tallent can be calculated with any degree of certainty. Indeed, the government has not established Tallent proximately caused *any* of Vicky's losses. As the Court explains in more detail below, the Court doubts the government will ever be able to make such a showing with respect to defendants convicted of possession, receipt, or distribution of child pornography as opposed to its production and manufacture.

### D.     Proximate Cause

One of the most challenging aspects of § 2259 is determining the proper proximate cause analysis. Courts have wrestled with two specific questions: Does 18 U.S.C. §2259(B)(3) impose a proximate cause requirement on §2259(B)(3)(A)-(F) or just on §2259(B)(3)(F); and 2) regardless of whether proximate cause must be established for §2259(B)(3)(A)-(F) or just for §2259(B)(3)(F), how should the Court conduct the proximate cause analysis under §2259(B)(3)?

9

### 1.    Applicability of Proximate Cause under § 2259

Although the question of the application of a proximate cause requirement under § 2259(B)(3) has not been fully resolved, there is now considerable consensus for the view the statute requires a showing the offender proximately caused all of the losses claimed under § 2259(B)(3)(A)-(F), and not just "any other losses" under § 2259(B)(3)(F). *See United States v. Kearney*, 672 F.3d 81, 95-95 (1st Cir. 2012) (citing cases). As *Kearney* notes, however, the circuit courts have, under relatively similar facts, reached this conclusion on different rationales. *Id.* at 96. In this case, the government has conceded the proximate cause analysis applies to all six of the potential losses listed in § 2259(B)(3), a position consistent with a recent decision of the Sixth Circuit. *Evers*, 669 F.3d at 659 ("[R]estitution awards for all categories of losses set forth in § 2259(b)(3)(A)-(F) require the government to show that the losses were proximately caused by the defendant's offense."). Although the Court is not persuaded application of a proximate cause requirement to § 2259(B)(3)(A)-(E) is either the best construction of the statutory language or consistent with Congressional intent, it is bound to follow the Sixth Circuit's interpretation and apply the proximate cause requirement to all categories of losses set forth in § 2259(b)(3)(A)-(F).[8]

---

[8]  The Court notes those circuits that have applied the proximate cause requirement to § 2259(b)(3)(A)-(E) have often relied on the Supreme Court's single statement in *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345 (1920), that "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all," *id.* at 348. Relying on this sentence alone, however, fails to account for two important aspects of the *Porto Rico Railway* decision. First, the statute at issue in that case differs significantly in its grammatical organization from § 2259(b)(3). Second, most courts of appeal have quoted the sentence above, but not also quoted a sentence later in the same paragraph: "[i]f the application of the clause were doubtful, we should so construe the provision as to effectuate the general purpose of Congress." *Id.* Where the "rule" enunciated by the Supreme Court in the first quoted sentence was consistent with the statutory provision at issue in *Porto Rico Ry.*, applying the same "rule" to § 2259(b) is arguably inconsistent with Congressional purpose in § 2259 to provide restitution for victims of child pornography

## 2.  Proximate Cause Analysis

Having determined it must apply the proximate cause requirement to all categories of losses suffered by Vicky, the Court must next determine how it should perform the proximate cause analysis.  Under very different facts,[9] the Sixth Circuit in *Evers* requires a court to determine "some direct relationship between the injury asserted and the injurious conduct alleged."  *Evers*, 669 F.3d at 659 (citations omitted).  The panel in *Evers* quoted approvingly the Ninth Circuit's approach in *Kennedy* that

> for purposes of determining proximate cause under § 2259, a court must identify a causal connection between the defendant's offense conduct and the victim's specific losses. There may be multiple links in the causal chain, but the chain may not extend so far, in terms of the facts or the time span, as to become unreasonable. Although the defendant's conduct need not be the sole cause of the loss, it must be a material and proximate cause, and any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct.

*Id.* (quoting *Kennedy*, 643 F.3d at 1262-63) (internal alterations omitted).  Because the panel in *Evers* did not consider these principles in the context of a child pornography defendant whose actions in harming the victim consisted of viewing images of her abuse, that case offers limited guidance for Tallent's case.

Broadly speaking, there are two plausible views on the proximate cause analysis in child

---

offenses.  For a more developed version of this argument, see *In Re Amy Unknown*, 636 F.3d 190, 198-200 (5th Cir. 2011), *reh'g en banc granted*, 668 F.3d 776 (5th Cir. 2012).

[9] The defendant in *Evers* actually molested the victim and produced the visual depictions. *Evers*, 669 F.3d at 650.  Therefore, determining Evers proximately caused the victim's harm was considerably easier than in a possession or receipt case.

pornography possession cases.[10]  *See* Dina McLeod, Note,  *Section 2259 Restitution Claims and Child Pornography Possession*, 109 Mich. L . Rev. 1327, 1337-52 (2011).  These views were famously articulated by Judge Andrews and Judge Cardozo in *Palsgraf v. Long Island R.R.*, 248 N.Y. 339 (1928).  Under the Andrews approach, proximate cause essentially serves as a proxy for fairness.  Under this view, because one can almost always imagine a set of facts under which the defendant's action lead to the plaintiff/victim's injury, courts should limit liability on public policy grounds where holding the defendant liable would be unfair or unjust.  Although this view has not gained significant traction (and was the dissenting view in *Palsgraf*), the Supreme Court has suggested sympathy with this approach to proximate cause in a comparatively recent discussion. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) ("Here we use 'proximate cause' to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts. At bottom, the notion of proximate cause reflects 'ideas of what justice demands, or of what is administratively possible and convenient.'") (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Law of Torts* § 41, p. 264 (5th ed. 1984)).[11]  This view can be called the "public policy" or the "Andrews" approach to proximate cause.

---

[10] The proximate cause discussion in this and the following paragraphs looks to notions drawn from civil tort law.  At the same time, and as noted earlier, the Court does not blindly follow a proximate cause conception drawn from civil tort law because the Court has before it a criminal case, where the goals and purposes are different.  There is no reason why a tort concept should be lifted from tort law and applied in its totality into a completely different legal context where the goals and purposes are completely different.

[11] The *Holmes* Court continued, however, to emphasize the relational–or "Cardozo"–view of proximate cause: "Accordingly, among the many shapes this concept took at common law . . . was a demand for some direct relation between the injury asserted and the injurious conduct alleged. Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Holmes*, 503 U.S. at 268 (citations omitted).

The second way to analyze proximate cause is commonly referred to as the "reasonable foreseeability" or "Cardozo" approach. To find the proximate cause element satisfied in a torts case, a court must determine whether the injury suffered by the plaintiff/victim was a reasonably foreseeable result of the defendant's conduct. Under very different facts than those in this case, the Sixth Circuit has held in a child pornography production and possession case a court must find "some direct relationship between the injury asserted and the injurious conduct alleged." *Evers*, 669 F.3d at 659.

The United States Court of Appeals for the First Circuit, in a recent child pornography possession and distribution[12] case, developed a more nuanced–and seemingly novel–view of proximate cause in a factual situation similar to that before the Court. Starting with statute, the panel noted "it is clear . . . Congress intended some casual link between the losses and the offense to support the mandated restitution." *Kearney*, 672 F.3d at 95. The panel then concluded there was no conflict between "traditional notions of proximate cause and a finding of proximate cause on these facts." *Id.* at 96. Although the panel did not define "traditional notions of proximate cause," its ensuing discussion indicated it predominantly followed the Cardozo view, with a brief reference to the types of policy considerations inherent in the Andrews view.

Applying the "traditional view of proximate cause" to the facts before it, the panel concluded "the injury to the child depicted in the child pornography, including injury that will require mental-health treatment, is a readily foreseeable result of distribution and possession of child pornography."

---

[12] Although the defendant pleaded guilty to both possession and distribution counts, the First Circuit saw no important distinction between possession and distribution. Rather, the panel appeared to distinguish between possession/distribution cases, and manufacture/production cases. *See Kearney*, 672 F.3d at 97.

*Id.* at 14. To buttress this conclusion, the panel again grounded its proximate cause analysis in Congressional intent as articulated in § 2259:

> Congress neither limited restitution to the initial creation of child pornography nor excluded cases of child pornography possession and distribution from those offenses which require mandatory restitution. This expression of congressional intent also weighs against any construction of a proximate cause requirement that would functionally preclude any award of restitution under § 2259 for possession and distribution offenses.

*Id.* at 97. Having found the victim's injuries–including her mental health treatment–were a reasonably foreseeable consequence of the defendant's actions, the panel briefly noted no policy concerns militated in favor of cutting liability off. Thus, the panel in essence determined proximate cause was satisfied under both the Andrews and Cardozo views, although it did not frame its discussion in this way.

Once the panel determined the proximate clause standard had been satisfied under both the Andrews and Cardozo views, it then directly addressed arguments the defendant had made to the contrary. The defendant contended 1) because the harm flowed from the father's abuse of the victim, it was too attenuated and indirect to satisfy the proximate cause standard; and 2) because so many people had viewed child pornography, his individual contribution cannot be said to have caused any harm absent specific linkage to the victim's knowledge about him.

The panel dismissed the first argument as "an unsuccessful attempt to use but-for causation to limit those reasonably foreseeable losses." *Id.* at 98. In dealing with the second argument, the panel offered what may be a novel approach to the proximate cause analysis. It conceded the harm the victim had suffered could not be attributed to any single instance of possession or distribution, but nonetheless explained the defendant's conduct "contributed to a state of affairs in which Vicky's emotional harm was worse than would have otherwise been the case." *Id.* The panel then stated a

14

novel standard for proximate cause analysis in cases involving multiple actors: "Proximate cause exists where the tortious conduct of multiple actors has combined to bring about harm, even if the harm suffered by the plaintiff might be the same if one of the numerous tortfeasors had not committed the tort." *Id.*

Perhaps to temper the novelty of this standard, the panel notes the principle underlying the standard is "well-accepted." To support this claim, the panel cites a passage from Prosser and Keeton on but-for causation to the effect that when the conduct of more than one actor contributes to an event but the application of but-for causation to each of them would absolve them of responsibility, each actor's action is considered to have been a but-for cause of the event. *See Prosser and Keeton on Torts* § 41 at 268. While this rule is indeed well-settled in but-for causation, its application to extend proximate cause liability appears novel.

Indeed, this new approach gives rise to what may be called–and what the panel in essence describes as–"aggregate level" proximate cause: "It is clear that, taken as a whole, the viewers and distributors of the child pornography depicting Vicky caused the losses she has suffered, as outlined in the expert report. Proximate cause therefore exists on the aggregate level, and there is no reason to find it lacking on the individual level." *Kearney*, 672 F.3d at 98.

The development of a new "aggregate level" proximate cause standard stands in considerable tension with both the Cardozo and Andrews view of proximate cause. Traditional proximate cause analysis has focused on the individual role of the defendant and whether a plaintiff/victim's injury was a reasonably foreseeable result of defendant's actions (Cardozo) or whether it is fair and wise as a matter of public policy to hold that defendant liable (Andrews). In light of this focus on the individual defendant, a number of recent articles have advocated disallowing restitution in child

15

pornography cases given the absence of proximate cause under either the Andrews or Cardozo view. *See* Mcleod, *Section 2259 Restitution Claims and Child Pornography Possession*, *supra*; Dennis F. DiBari, Note, *Restoring Restitution: The Role of Proximate Cause in Child Pornography Possession Cases Where Restitution is Sought*, 33 Cardozo L. Rev. 297, 324 (2011) ("Holding defendants in possession cases responsible for harm they did not cause via expansive proximate cause analyses and dubious restitution calculations is not only legally erroneous; it may also be unconstitutional.")

Although the *Kearney* panel's "aggregate-level" proximate cause standard stretches the traditional views of proximate cause (perhaps even to a breaking point), the panel did so in order to adhere to the Congressional intent of providing restitution to victims in child pornography cases.[13] Indeed, the panel again emphasized Congressional intent in rejecting the theory that a victim could only show causation by focusing on a specific defendant's *viewing and redistribution*[14] of her images and then attributing specific losses to that defendant's actions. *Kearney*, 672 F.3d. at 99 (emphasis added). To accept such a theory, according to the panel, would frustrate the purposes of § 2259.

Courts have reached the same result the panel in *Kearney* did by relying on a "substantial factor" theory. In one of the earliest reported appellate cases interpreting § 2259, the United States Court of Appeals for the Third Circuit upheld a district court's award of restitution under § 2259 on the basis "the strain and trauma stemming from [the defendant]'s actions was a substantial factor in

---

[13] The *Kearney* court may be recognizing that to blindly follow tort law concepts in a criminal prosecution where Congressional intent is clear is illogical. The court may have borrowed some of the concepts of tort law but then applied them generously to better effect Congressional intent. Tort law informs but does not dictate the result. *See supra* note 10.

[14] It is not clear whether the First Circuit would, or whether any court should, view this issue differently when the only question is a defendant's viewing. Given the *Kearney* panel's collapsing of possession/distribution, *see supra* note 12, it does not appear the First Circuit would make a distinction.

causing the ultimate loss." *United States v. Crandon*, 173 F.3d 122, 126 (3d Cir. 1999). Although *Crandon* is factually dissimilar to the case before the Court, later courts have applied the substantial factor analysis in child pornography possession cases. *See Hardy*, 707 F.Supp.2d at 612 (noting victim had suffered harm caused by multiple actors, and concluding that "[a]nalogous situations with multiple concurrent causes are more common in the realm of torts, where the standard approach has been to find proximate cause when the court finds, as it did in *Crandon*, that the wrongful conduct was a 'substantial factor' in the harm"). In a recent post-*Kearney* case, a district court concluded both the "substantial factor" test discussed in *Crandon* and *Hardy* and the aggregate-level proximate cause analysis from *Kearney* justified finding a child pornography defendant had proximately caused a victim's losses within the meaning of § 2259 where that defendant viewed images of the victim, but never encountered her. *United States v. Veazie*, No. 2:11-cr-202-GZS, 2012 WL 1430540, at *3 n. 4 (D. Me. Apr. 25, 2012) (noting the court would find proximate cause under either the *Kearney* standard or the "substantial factor formulation"); *see also United States v. Olivieri*, Crim. No. 09-743, 2012 WL 1118763, at * 5-6 (D. N.J. Apr. 3, 2012).

Some courts have determined the government did not establish the proximate cause showing in cases with similar facts because there was no casual connection between the defendant's actions and the victim's losses. In *Kennedy*, a Ninth Circuit panel vacated a district court's restitution award because the government failed to introduce any evidence demonstrating a casual chain between the defendant's conduct and the victims' losses. *Kennedy*, 643 F.3d at 1263. In referring to *United States v. McDaniel*, 631 F.3d 1204 (11th Cir. 2011), the *Kennedy* court suggested the government could have established proximate cause through evidence indicating 1) the victim knew defendant possessed her images (perhaps through government notification program); 2) the victim suffered

17

when she received the notification; and 3) the victim's suffering necessitated further therapy. *See Kennedy*, 643 F.3d at 1263. Similar rationales in *United States v. Aumais*, 656 F.3d 147, 155 (2d Cir. 2011) (defendant not a substantial cause of victim's losses because no evidence linked defendant's possession of victim's image to any of victim's losses) and *United States v. McGarity*, 669 F.3d 1218, 1269-70 (11th Cir. 2012) (no witness able to testify regarding harm caused victim by defendant's possession of pornographic images memorializing her), led appellate courts to vacate district court restitution awards. In *McGarity*, the court expressed concern a more expansive approach to proximate cause would transform restitution for possession of child pornography into strict liability. *McGarity*, 669 F.3d at 1270 (noting § 2259 "was intended to compensate victims of child pornography for harms caused by individual defendants and not to serve as strict liability against any defendant possessing such admittedly repugnant images or videos").[15] While each of these courts acknowledged their restrictive reading of the proximate cause requirement would make compensation for a child pornography defendant under § 2259 extremely unlikely,[16] they placed that failing squarely on the shoulders of Congress. *See id.* at 1269; *Kennedy*, 643 F.3d at 1266 ("Nevertheless, the responsibility lies with Congress, not the courts, to develop a scheme to ensure

---

[15] The Court notes Congress could in fact have intended to compensate child pornography defendants by using the restitution statute as a strict liability punishment for defendants. The statute, unfortunately, is not clear on this point.

[16] In *Kennedy*, the court observed
While we do not rule out the possibility that the government could devise a formula by which a victim's aggregate losses could be reasonably divided (for example, by developing a reasonable estimate of the number of defendants that will be prosecuted for similar offenses over the victim's lifetime, and dividing the total loss by that amount), we suspect that § 2259's proximate cause and reasonable calculation requirements will continue to present serious obstacles for victims seeking restitution in these sorts of cases.

*Kennedy*, 643 F.3d at 1266.

that defendants . . . are held liable for the harms they cause through their participation in the market for child pornography.")

As this extended discussion indicates, there is considerable uncertainty over the proper proximate analysis a court should apply to a restitution claim made in a child pornography possession/receipt case. Although in tension with the traditional notion of proximate cause, the *Kearney* court's standard–as well as the "substantial factor" theory advanced by other courts–takes account of Congressional intent in § 2259. Absent specific guidance from the Sixth Circuit, the Court finds this approach persuasive precisely because it seeks to reconcile the Congressional intent of compensating child pornography victims and the government's requirement to establish proximate cause for all losses described in § 2259 (b)(3). *See Kearney*, 672 F.3d at 99 ("Interpretation and application of the concept of proximate cause must be consistent with the congressional purpose of § 2259 of ensuring full compensation of losses for the victim of child pornography distribution and possession."). Accordingly, the Court concludes the proximate cause requirement has been satisfied here, where there is no question Tallent was one of the multiple actors responsible for the harm–and resulting economic losses–suffered by Vicky.

### E. Determining the Amount of Restitution

While the tension between statutory language and Congressional intent in § 2259 is considerable but still manageable through the application of an expansive approach to proximate cause, that tension becomes irreconcilable when a court must determine an amount of restitution. The diversity of approaches courts have taken illustrates this irreconcilability. Although the statute clearly indicates a court shall order the full amount of the victim's losses, §2259(b)(1), courts rarely seem to have done this, *see* Mcleod, *2259 Restitution Claims*, *supra* at 1332 (collecting cases).

19

Sometimes a court will accept a prosecutor's figure.  *See, e.g.*, *Kearney*, 672 F.3d at 100-01.  And often courts seem to use a formula of some sort, looking to the average of restitution awards made, or some proportion of the total restitution claim, including the average of all restitutionary awards for a given victim (sometimes omitting the highest and lowest amounts).  It is not clear how courts have squared this use of such formulas with the statutory command to order the full amount of the losses, and the further suggestion that a court should not take into account "the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source."  § 2259(b)(4)(B)(ii).[17]

Another question related to determining a proper dollar amount circles back to the "multiple actors" problem discussed above in the section on the proper proximate cause analysis: should a court impose joint and several liability?[18]  In fact, most courts have avoided this question because they have not imposed the full amount of the losses.  The reference in § 2259(b)(2) to enforce a restitution order in the same manner as under § 3664 suggests joint and several liability is acceptable.  *See* § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss

_____

[17] In fact, the statute only disallows courts from declining to issue an order of restitution at all on this ground.  Nonetheless, a plausible reading of Congressional intent with respect to this provision–and one that is consistent with the "full amount of losses" provision–would view it as a proscription of taking into account collateral sources of income when issuing an order.

[18] One way to view this in the "aggregate harm" or "aggregate proximate cause" context is to look at all of the defendants as being engaged in concerted action where their collective goal was to have child pornography produced and distributed so they could collectively receive and possess it.  Viewed in this context, the defendants could be looked upon much like conspirators.  Under conspiracy law a conspirator is responsible for the acts of the conspiracy that occurred prior to the time the individual joined the conspiracy and liable for acts of the conspiracy until the conspirator made a clean break from the conspiracy.  The government has not argued for application of conspiracy law here, and the Court is unaware of any case which uses an analogy from criminal conspiracy law when analyzing restitution under § 2259.

20

of a victim, the court may make each defendant liable for payment of the full amount of restitution

or may apportion liability among the defendants to reflect the level of contribution to the victim's

loss and economic circumstances of each defendant.").  But some courts have concluded § 3664(h)

can only be applied to a single case with multiple defendants, suggesting the provision cannot be

used to impose liability on child pornography defendants in other cases.  *See United States v.*

*Monzel*, 641 F.3d 528, 539 (D.C. Cir. 2011); *Aumais*, 656 F.3d at 156; *Veazie*, 2012 WL 1430540,

at *4 n. 7 (identifying five reasons joint and several liability is inappropriate for a restitution claim

under § 2259).

　　　Here, the government proposes the Court adopt a formula for calculating the amount to

award in restitution: divide the full amount of Vicky's provable losses incurred after the date of

Tallent's offense by the number of defendants convicted of possessing Vicky's image, which at

present is approximately 200 (Court File No. 15, pp. 3-5).  Tallent has no objection to this approach.

As the government correctly notes, circuit courts assessing restitution awards have not demanded

strict mathematical accuracy in determining a restitution amount, *see, e.g.*, *Kearney*, 672 F.3d at 100

("Absolute precision is not required.") (citations omitted), and in the Sixth Circuit, the amount of

a district court's resitutionary award is reviewed under a deferential abuse of discretion standard.

*See Evers*, 669 F.3d at 654.[19]

　　　The Court is not persuaded the approach advocated by the government and agreed to by

Tallent is consistent with § 2259's clear directive that "[t]he order of restitution under this section

shall direct the defendant to pay the victim (through the appropriate court mechanism) the full

_____

[19] Whether restitution is permitted under the law is reviewed *de novo*.  *Evers*, 669 F.3d at
654.

amount of the victim's losses as determined by the court pursuant to paragraph (2)." § 2259(b)(1).

In its brief, the government contends the Court can comply with this statutory language by ordering the full amount of the losses *caused by defendant*–in essence supplying this additional language to § 2259(b)(1) as an extended gloss on the proximate cause requirement the government argues *Evers* requires. But *Evers*, which decided a § 2259 restitution question on facts very different than those now before the Court, did not indicate whether the Sixth Circuit is more inclined to follow the restrictive view of proximate cause advanced in *Kennedy*, *Aumais*, and *McGarity*, or adopt the more expansive approaches to proximate cause spelled out in *Kearney* and *Crandon*, or whether either approach affects how a court is to determine the proper restitution amount.

More troubling, the government does not explain how its approach squares with the "bedrock principal" in both tort and criminal law that a defendant can only be held liable for the harm he proximately caused. *Monzel*, 541 f.3d at 535, 537; Wayne R. LaFave, *Substantive Criminal Law* § 6.4(c), at 471-72; *Veazie*, 2012 WL 1430540, at * 5; *Olivieri*, 2012 WL 1118763, at * 11 ("The Court must apportion liability according to the amount of loss this Defendant proximately caused."). As in *Veazie*, the government here established Tallent was one of a number of individuals who proximately caused Vicky harm, but made no showing Tallent caused all of Vicky's harm nor any showing concerning the amount of harm traceable to Tallent. *See Veazie*, 2012 WL 1430540, at * 5. Other than pointing to the total economic losses Vicky has suffered, the government has submitted no evidence itemizing which of those losses are attributed to which of the numerous perpetrators–including Vicky's biological father, who abused her sexually, those who distributed images of Vicky's victimization, and those, like Tallent, who received and viewed Vicky's image–involved in producing these losses. The government does not argue, nor can it be the case,

22

that Tallent's conduct alone has proximately caused all of Vicky's losses.

The government's proposed methodology for determining the amount of restitution Tallent owes to Vicky suffers from two significant flaws. First, and as explained in *Veazie*, the formula of dividing the total restitutionary amount by the number of defendants possessing images of a given victim will gradually reduce the amount of restitution to be paid until a defendant is required to pay almost nothing:

> Over time, awarding restitution based on the average of the restitution awards in past cases involving the same victim will bring down the average restitution award. In other words, if each successive restitution award is based on the average of past restitution awards, the next award will be slightly lower than the preceding award. Eventually, with enough defendants and enough restitution awards, the average restitution award will be just one penny.

*Id.* at *5. Unless ones assumes a victim suffers a new harm each time she learns of a new defendant who has been convicted of possessing her image–a peculiar sort of harm, given that it would be the result of a system put in place by the government in order to allow victims to pursue restitution, presumably to offset the harm they have already suffered–the formula requires imposition of increasingly smaller amounts of restitution. Second, and related to the first flaw, the formula takes no account of the culpability of a given defendant. Thus, whether a defendant possesses two or 20,000 images of Vicky, whether he viewed those images once or thousands of times, makes no difference to the amount of restitution he is to pay under the formula. But surely culpability matters. The more images a defendant has possessed and viewed and the longer the amount of time he has had those images, the more likely it is he has proximately caused a greater proportion of a victim's economic losses–if nothing else than by stimulating the market for such images at a greater rate than a defendant possessing and viewing fewer images–and therefore should have to pay a greater share

of restitution.[20] *Cf.* 18 U.S.C. § 3664(h) (permitting a court to apportion liability among defendants "to reflect the level of contribution to the victim's loss"). Here, the government has offered no evidence indicating the number of Vicky's images Tallent possessed (or how many times he viewed those images), let alone a comparison of the number of images Tallent possessed to the number possessed (or distributed) by other defendants convicted of possessing Vicky's image.

In criticizing the government's formulaic approach to restitution under § 2259, the Court is quick to add the fault here lies not with the government, but with the particular language Congress has used in this statute. Indeed, the Court cannot imagine how the government could meets it burden to provide specific evidence delineating that quantum of damages proximately caused by Tallent, or any other defendant convicted of a possession or receipt offense. The statute promises more than it can deliver. It makes a court's imposition of restitution mandatory, but it then demands the government to prove what is in essence unprovable: identifying, among the vast sea of child pornography defendants, how the conduct of a specific defendant occasioned a specific harm on a victim. *See Veazie*, 2012 WL 1430540, at * 6 ("Herein lies the problem: § 2259 mandates that the Court order restitution, yet its proximate cause limitation also requires that the Court order no more restitution than proximately caused by the defendant's criminal conduct.") (citations omitted). The government has not made that showing here, and the Court is at a loss to determine how it could have made such a showing. In the absence of evidence linking Tallent to the losses suffered by Vicky, the Court cannot fall back on speculation to determine an appropriate amount of restitution. Accordingly, it must deny the government's motion.

---

[20] Notwithstanding the absence of any distinction in the statute, in the Court's view, those who have produced and distributed child pornography are more culpable–and should be treated as such–than those who have possessed or received such material without producing or distributing it.

24

Congress surely neither anticipated nor desired the result the Court reaches today. Congress's intent to provide restitution to the victims of heinous and disturbing child pornography offenses permeates § 2259, perhaps most notably in the statutory directive making a restitution award in these cases mandatory. § 2259 (b)(4). Nor does the Court cherish reaching a result so clearly at odds with Congressional intent. But the Court must give meaning to the statute's proximate cause requirement, which in turns requires the Court to order restitution equal to the amount of harm the government proves Tallent caused Vicky. *Cf. Veazie*, 2012 WL 1430540, at *6. Faced with the disturbing predicament that a court will quite possibly never be able to order restitution under these circumstances, the Court can do no better than agree with the assessment of the Ninth Circuit in *Kennedy*:

> [W]e suspect that § 2259's proximate cause and reasonable calculation requirements will continue to present serious obstacles for victims seeking restitution in these sorts of cases. Nevertheless, the responsibility lies with Congress, not the courts, to develop a scheme to ensure that defendants . . . are held liable for the harms they cause through their participation in the market for child pornography. In the future, Congress may decide to reconsider whether § 2259 is the best system for compensating the victims of child pornography offenses, or whether statutory damages of a fixed amount per image or payments into a general fund for victims would achieve its policy goals more effectively.

*Kennedy*, 643 F.3d at 1266. So long as the Court is required to made a proximate cause finding the Court will be unable to fulfill the evident Congressional intent. Unless and until there is some change in the statutory language, this Court is bound by the statute's language. Because the government did not prove Tallent proximately caused any of the losses suffered by Vicky, the Court cannot order any restitution in this case.

The Court recognizes that the regrettable consequence of this analysis is to carve out an exception to the mandatory restitution statute for those defendants that possess, receive, and

distribute child pornography.


**III.     CONCLUSION**

      For the reasons discussed above, the Court **DENIED** the government's motion that Tallent

pay restitution to Vicky under 18 U.S.C. § 2259.


            **/s/**_____

            **CURTIS L. COLLIER**
            **CHIEF UNITED STATES DISTRICT JUDGE**